*506 OPINION OF THE COURT
Lewis R. Friedman, J.
This is a proceeding commenced pursuant to RPAPL article 7-A by the Commissioner of the Department of Housing Preservation and Development of the City of New York (DHPD). The petition alleges that the property at issue is a dwelling as defined by RPAPL 782 and that there are and have been violations of the Multiple Dwelling Law, the New York City Housing Maintenance Code (HMC; Administrative Code of City of New York, tit D, ch 26), and the regulations of the Loft Board.
The respondent owner moves to dismiss on several grounds. Primarily the owner argues that petitioner lacks standing to bring this proceeding. The property, a loft building, is registered as an interim multiple dwelling (IMD) under the provisions of Multiple Dwelling Law article 7-C; therefore, the owner argues, only the Loft Board can commence a RPAPL article 7-A proceeding. The questions arising out of the application of RPAPL article 7-A to IMD’s have not previously been decided. The court has noted the steadily increasing number of article 7-A proceedings involving lofts.
First it is important to note that there can be no question of the application of RPAPL article 7-A to IMD’s. Article 7-A applies to "dwellings”. That term was intended by the Legislature to apply to any housing accommodation occupied by three or more persons regardless of the legal status of the building. The statute specifically includes units "notwithstanding that certificates of occupancy were issued for portions thereof as one or two family dwellings or that the dwellings are not a multiple dwelling as defined in the multiple dwelling law.” (RPAPL 782.) A declared IMD obviously fits that description even though there is nonconformity with the certificate of occupancy.
The owner contends that the petition is fatally defective since it was brought by the petitioning Commissioner rather than by the Loft Board. It also argues that the failure to join the Loft Board as a party requires dismissal.
RPAPL 770 (1) provides that a proceeding for the appointment of an administrator may be brought by: "the commissioner of the department of the city of New York charged with enforcement of the housing maintenance code of such city”.
It appears that the legislative intent was to name the *507 Commissioner of DHPD as the party who may initiate these proceedings.
New York City Charter § 1802, as amended in 1977, at the time of the dissolution of the former Housing and Development Administration, in describing DHPD provides:
“the commissioner may exercise or delegate any of the following functions, powers and duties which are vested in the department:
”1 * * * the enforcement of those provisions of the multiple dwelling law or any other law, rule or regulation which relate to the maintenance, use, occupancy, safety or sanitary condition of any building or portion thereof which is occupied, arranged or intended to be occupied as a home, residence or dwelling place”.
Under that section it is clear that the petitioning Commissioner is the governmental authority authorized to enforce the HMC and, therefore, the authority authorized to initiate proceedings under the RPAPL. In 1978, as another part of the legislation dissolving HD A, the term "commissioner of the department” was substituted for the term “administrator of the agency”; this is another clear authorization of the DHPD Commissioner as the responsible governmental official to initiate RPAPL article 7-A proceedings.
The Loft Board clearly is not the agency described in RPAPL 770 (1). The Loft Board is defined in Multiple Dwelling Law § 282 as a “special loft unit” consisting of representatives “of the public, the real estate industry, loft residential tenants, and loft manufacturing interests, and a chairperson”. There can be no doubt that such a “special unit” is not a "department” of the city government. Further, the Loft Board has no "commissioner”. Indeed, "[t]he members of the loft board shall not be considered employees of the state or the municipality” (Multiple Dwelling Law § 282). The "chairperson” or executive director are not the statutory equivalent of a departmental commissioner.
The functions of the Loft Board do not include the “enforcement of the housing maintenance code” of New York City. “The loft board shall have the following duties * * * (d) the issuance, after a public hearing, and the enforcement of rules and regulations governing minimum housing maintenance standards in interim multiple dwellings” (Multiple Dwelling Law § 282). That grant of power is far less than that required under the RPAPL for an agency to be considered authorized *508 to bring article 7-A proceedings. The owner simply misconstrues the statute when it argues that the petitioning agency must be the one which regulates the standards for lofts, for there is no such requirement. It is also significant that Multiple Dwelling Law article 7-C does not provide the Loft Board with the authority to sue to enforce its orders. (See, Multiple Dwelling Law §§282, 284 [1] [iii] [both of which refer to enforcement lawsuits commenced by "the municipality” not by the Loft Board].)
The situation is far different from that in Long v Kissling Real Estate (80 Misc 2d 817 [Rockland County Ct 1975]) relied upon by the owner. In that case, the petitioning official was simply not included in RPAPL article 7-A as a proper petitioner. Here, the petitioner is clearly included even though it may well be that there are others, such as the Loft Board who may be interested in such proceedings.
The result may not be the most reasonable one imaginable. There is no doubt that the special considerations prevailing in lofts were deemed by the Legislature to require special treatment when it adopted Multiple Dwelling Law article 7-C. The Loft Board has been developing expertise and a special staff; the courts give great deference to its decisions. (See, e.g., Korn v Gleich, NYLJ, Feb. 17, 1984, p 6, col 3 [App Term, 1st Dept].) The Loft Board, of course, cannot expand its own jurisdiction. The Rules Relating to Enforcement of Minimum Housing Maintenance Standards for Interim Multiple Dwellings, adopted in 1984, do not, despite the owner’s arguments here, even begin to claim exclusivity in enforcement of the Housing Maintenance Code in IMD’s.
The views of the Loft Board would be of value to the court in the ultimate resolution of the case after the facts are determined. That does not require the Loft Board to be the petitioner in the face of clear contrary legislation or require it to become a party, as the owner demands. The Loft Board is not a necessary party to this case.
The owner’s motion to dismiss was followed by its motion to amend the answer to allege the petitioner’s lack of standing. The motion will be denied since the court has determined the motion to dismiss on the merits and the amended pleading adds nothing that was not already before the court. .
The nonpetitioning tenants have moved to intervene in the action. Clearly, these tenants would be affected by the proceeding and should be parties. (CPLR 1013.) It was for that *509 reason that RPAPL article 7-A requires service on the nonpetitioning tenants. Even though RPAPL 770 (2) allows enough nonpetitioning tenants to replace the Commissioner as the petitioner, there is no requirement that their participation be as petitioner or not at all. The motion to intervene is granted.
The owner moves for discovery. Specifically it requests an examination before trial of the Commissioner. The court is aware that there has been litigation involving this building before this court in other cases, before the Supreme Court and before the Loft Board. Under those circumstances, which are not disclosed in the moving papers, the conduct of depositions is unwarranted.